# THE STATE v. LOTTIE LOCKHART and LILLIE DALE, Appellants.

## Division Two, May 16, 1905.

1. **APPELLATE PRACTICE: Weight of Evidence.** Although it is the province of the jury to judge of the facts, yet the question whether there is any substantial evidence of any material fact is a question for the court, and when that question is properly presented, it is the duty of the appellate court to consider it, just as any other assignment of error.

2. **LARCENY: Insufficient Evidence.** The evidence in this case, which was a prosecution for larceny of money charged to have been taken from the prosecuting witness by means of the "panel game" being practiced upon him by the defendants, one of whom was a prostitute and the other the keeper of a bawdy-house, is examined, and held insufficient to support a conviction.

3. **IMPROPER REMARKS OF ATTORNEY: House of Prostitution.** One act of prostitution does not constitute proof that the house in which it occurred was a notorious house of prostitution, nor justify the statement of an attorney that it was such.

4. **LACENY: Repayment Under Threat.** The repayment, upon demand and threat of arrest, of money charged to have been stolen by the occupiers of a bawdy-house, is held to be a suspicious circumstance, but standing wholly disconnected with any other incriminating fact, it is not sufficient to support a conviction.

5. ———: **Statements of Prosecuting Witness: Improperly Excluded.** Where the prosecuting witness had testified that he lost his money at a certain bawdy-house, it was error to exclude proof that, a few hours after the alleged theft, he stated, "I have been robbed, but I don't know where; I don't know how anyone could have robbed me." These statements were admissible as tending to impeach or impair the certainty of his testimony.

6. ———: **Conspiracy: Instruction: No Evidence.** Where, in the prosecution of two defendants for larceny, there is no evidence of a joint action in the commission of the offense, it is error to give an instruction calculated to impress the jury that the larceny was the result of a criminal conspiracy between the defendants.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AS TO APPELLANT LOCKHART; REVERSED AND RE-
MANDED AS TO APPELLANT DALE.

*Thos. B. Harvey* for appellant.

(1) The only tangible evidence of any character against either of the defendants was Dale's consent to pay Sawyer the amount that he claimed he had lost; but the court must bear in mind her denial all the while that she knew anything of the taking of the money, and that she paid the amount under the duress of threatened arrest. And a payment under such circumstances should not be worth much as in the nature of an admission. Furthermore, such admission is incompetent as proof of the *corpus delicti* and could not be considered against her until there was *aliunde* satisfactory proof that the crime had been committed and connecting her with it. (2) The fact that a man had gone to a woman's room on one occasion is not proof of its being a house of prostitution, nor does it warrant such an inference, and certainly cannot afford the least excuse for the ugly and suggestive charge that it was "notorious" as such, or that panel games were worked there. "The courts should not tolerate outside statements of counsel impeaching the character of parties." 2 Ency. P. & Pr., p. 781; Bessette v. State, 101 Ind. 85; Proffat on Jury Trial, sec. 250. (3) There was no evidence upon which to predicate the court's fourth instruction upon the theory of two or more acting together in the commission of a crime; and the instruction, framed as it was and improperly injected into the case, was simply an invitation to the jury to convict both of the defendants. State v. Fairlamb, 121 Mo. 149. (4) The court also erred in its ruling as immaterial the effort of defendants to show that on the even-

ing after the alleged loss of the money, Sawyer said: "I have been robbed, but I don't know where. I don't know how how anyone could have robbed me." This tended directly to impeach his statement that he had lost his money at 2111 Market street, and was unquestionably competent.

*Herbert S. Hadley,* Attorney-General, and *Rush C. Lake,* Assistant Attorney-General, for the State.

(1) That Sawyer was the victim of what is commonly known as the "panel game" cannot be questioned. Can it be questioned that these women, or either of them, would have returned him any money unless they had been guilty? What more conclusive circumstance can be presumed than that the money was returned when demanded? (2) The proper method to follow on making an objection to improper remarks of an attorney in argument is to ask the court to reprimand the attorney, and failing in this, to ask an instruction from the court to the jury to the effect that the remarks of the attorney are improper and should not be considered; and if the instruction is refused, save an exception. State v. Fischer, 124 Mo. 460; State v. Brown, 181 Mo. 222. Neither of the methods was followed in the trial of this cause, and the objection cannot be considered in this court. State v. Ray, 53 Mo. 345; Harrison v. Bartlett, 51 Mo. 170.

GANTT, J.—The defendants appeal from a conviction of grand larceny in the circuit court of St. Louis. The prosecution is by information. There is no irregularity in the record proper. The errors for which a reversal is sought are those which it is insisted occurred on the trial of the cause, and the insufficiency of the evidence.

The prosecuting witness was one Lunsford Sawyer. It appears from his evidence that at the date of

the alleged larceny he was rooming in St. Louis on La-
clede avenue.   Prior to that time he had been a clerk
in New York.   On the afternoon of the 15th of March,
1904, he left his room about two o'clock in the after-
noon and went down into the city and had been down
there about an hour and a half when he met the defend-
ant Lockhart about Twentieth street and Pine.   He was
walking along Pine street and she spoke to him and he
stopped and she invited him to her room.   He accom-
panied her to 2111 Market street.   She opened the door
and he and she went up stairs and went into a front
room.   Saw no one else until he passed defendant Dale
in the hall as he was leaving.   The room had folding
doors between it and the room in the rear of it, and a
curtain, "a lace curtain affair, like lace curtains on a
front window," hung in front of the folding door.   Af-
ter he reached the room he proceeded to undress him-
self and hung his coat on the chair.   His other clothing
he placed on a trunk at the foot of the bed.   The trunk
was almost in line with portiere.   He did not enter any
other room in that house that day.   After he had placed
his clothing on the trunk, the defendant Lockhart threw
the bed cover back over the foot of the bed, and prac-
tically over his clothing on the trunk, and got in the bed
and he then went to bed with her.   He testified he had
$220 in the hip pocket of his pants, in a pocket-book at
his boarding-house that day.   The money consisted of one
one-hundred-dollar bill, five twenties, and a ten-dollar
bill.   He had ten more in that pocket and the rest of his
money was in an outside pocket loose.   He gave the de-
fendant Lockhart $1.   He says he was in this room per-
haps one-half hour, and when he left, he went down
stairs by himself and passed the other defendant Dale
in the hall, but said nothing to her.

He took a car just after coming out of the said
house No. 2111 Market street, and returned to his room
and soon after reaching it examined his pocket-book
and found all of his money gone but two five-dollar

bills. He returned to the city and consulted a police-
man who advised him to go and he did return to No.
2111 Market and there met the old woman, the defend-
ant Dale, and inquired for defendant Lockhart, and
she told him she was out. He then told her he had lost
some money up there that afternoon, and she said she
knew nothing about it and requested him to wait until
defendant Lockhart returned about seven o'clock. He
left and went back at seven that afternoon and found
both of the defendants there. He told them the amount
he had lost, $210, and that they must give it back, or he
would have them arrested. Both women protested
they knew nothing of his money and the defendant Dale
tried to settle with him for $100; that she didn't want
him to think he had lost his money in her house; but
he remained positive in his demand and finally the de-
fendant Dale went into another room and brought him
$210, but in different denominations from the money he
had lost.

Asked if he heard any noise in the room while he
occupied the bed, he said, "Not any great noise; I seen
these curtains wave like the wind was blowing there and
*since then, I have kind of mistrusted there must be a
person come through that door.*" He made no mention
of the curtains blowing to the woman; he could see the
curtains as he lay on the bed. He testified that de-
fendant Lockhart was in his presence all the time he
was in the room with her; that most of the time she was
on the bed with him and he did not see her touch his
clothing; that he dressed himself immediately after
getting out of the bed and felt his pocket-book in his
pocket. His pocket-book was in a pocket that was but-
toned and it was still buttoned when he put on his trou-
sers and felt his pocket-book in there, but he recognized
after going to his room that the button was loose, but
he did not undertake to say that it was not in that con-
dition when he went to defendant's house and did not
observe that condition when he dressed after getting

out of the bed. Defendant Lockhart had nothing to say
or do about paying the prosecutor any money and took
no part in that transaction. In the course of his ar-
gument the assistant prosecuting attorney, over the ob-
jection of defendants, stated that "2111 Market street
is a house of prostitution, an open and notorious house
of prostitution," and upon objection that there was
no evidence to that effect, the court said, "That is a
proper subject of inference from the testimony; you do
not need to have the direct statement from the wit-
ness." Continuing, the representative of the State
said, "I say the young man was a victim of the panel
game, and the testimony of young Sawyer goes to show
that this was a room wherein a game of this kind could
be successfully worked there, and it was worked
there." The court held this proper argument.

I. The defendants jointly and severally urge that
the verdicts of the jury are without any substantial
support in the evidence.

An appellate court always enters upon an exami-
nation of this point with reluctance, inasmuch as the
law provides that the jury are the judges of all ques-
tions of fact, but it has been so long, and well, settled
that whether there is any substantial evidence of any
material fact is a question for the court, that when the
proposition is properly presented, it is our duty to con-
sider it just as any other assignment of error. For
convenience, the testimony tending to connect the de-
fendant Lockhart with the alleged larceny will be first
considered. Her guilt depends altogether upon the ev-
idence of Sawyer. He met her on Pine street, and she
solicited him to go to her room about 3:30 or 4 p. m.
He was not averse to her proposition. They were
strangers to each other. According to his story, they
indulged in no unnecessary conversation, but went at
once to her room in the house No. 2111 Market street.
She opened the door and he followed her in and, with-

out seeing any other person, they ascended the stairs to the second story and went into a front room, with two windows in it.    Once in the room no time was wasted in conversation or preliminaries.    She removed her hat and placed it on a dresser and retired from the room a minute or two, and he at once took off his coat and placed it on a chair near the door.    She returned and they both disrobed.    He placed his pants on a trunk near the foot of the bed.    When she had undressed, she threw back the bed cover and in so doing partially covered his clothing on the trunk and then got in bed first.    There is not a word or syllable of evidence tending to show that she knew how much money Sawyer had, whether much or little, or that she knew he carried his money in his pocket book in his pants pocket.    He had not displayed it in any manner, and says he carefully refrained from examining his pocket-book when he had accomplished his mission there because he thought it dangerous to display money in a large city.

They were on the bed together, undressed, and it is clear that, during the time they occupied the bed, it was a physical impossibility for her to have extracted the money from his pocket-book, as it was not in her reach.

When they concluded the business in hand, they arose and dressed.    She did not touch his pants, and the evidence leaves not a doubt that it would have been practically impossible for her to have gone to his pants, unbuttoned the pocket, even if she had known he had money in it, and taken a portion of the money out of his pocket-book, restored the five-dollar bills, replaced the pocket-book in the pocket and rebuttoned the pocket as he says he found it when he felt for it while dressing, all without being seen or observed by Sawyer, the prosecutor.

There is not even an intimation that the latter was intoxicated or had indulged in spirituous liquors that

day, or for that matter ever did. Indeed, we judge from the subsequent surmise of Sawyer and the argument of the assistant prosecuting attorney that neither of them thought the evidence even tended to prove that the defendant Lockhart personally abstracted the money from Sawyer's pocket, and the testimony of Sawyer leaves not even a ground of suspicion that she did so. So far as she was individually concerned, she was entirely exonerated from any actual caption or taking of the money, and outside of the bold, naked fact that she was an inmate of the house and a prostitute, there is not a scintilla of evidence showing any complicity whatever with the defendant Dale or any other person either in taking Sawyer's money or having any knowledge that it had been taken, until accused by him. She stoutly denied it when accused, and it is not even intimated that she had any part in paying Sawyer the money by defendant Dale or in any manner consented to it. The prosecuting attorney relied on the theory of a panel game, that is to say, he insisted that No. 2111 Market street was a house with secret entrances to the rooms to facilitate thefts by accomplices, but it need only be said that there was absolutely no testimony that the house was of that character. Certainly the story of Sawyer as to the waving of the lace curtain did not even approach to a well-founded suspicion even in his own mind, and furnished no basis for the confident assertion of the prosecuting attorney that such was the case. This is not a case, in so far as it affects the defendant Lockhart, even of strong suspicion. It appears rather to be a case in which the State demonstrated she was not guilty of the alleged larceny, if the State's sole witness, Sawyer, is to be believed. This is not a case wherein some unsophisticated or intoxicated man has carelessly displayed his money, and armed with this knowledge some designing prostitute or pimp has lured him into a house of prostitution and robbed him of his money or stolen it while

he was asleep or his attention distracted. So far as defendant Lockhart is concerned the proof shows she had never met Sawyer before, did not know he had money, nor how much, nor where on his person he carried it.

Sawyer was a sober man, with a large experience in Chicago and New York. His visit was in the middle of the afternoon. He saw none of the inmates of the house except defendant Lockhart and was with her only about thirty minutes. As already said, the facts detailed by him forbid the conclusion that she stole his money. After a careful review of every word of this testimony, we are driven to the conclusion that the verdict against her is wholly unsupported by evidence, and that the circuit court should have peremptorily directed her acquittal at the close of the evidence, and accordingly as to her the judgment is reversed with directions to discharge the defendant Lottie Lockhart.

II. As to the defendant Dale, the conviction must stand, if at all, upon the proof that she was fairly shown to be the proprietress of a house in which prostitution was practiced, and that the Lockhart woman resorted to it in plying her trade, and that when she was told that Sawyer had lost his money in her house, and had been threatened with arrest if it was not restored, she gave him $210, but at the time protested her ignorance of his money and her innocence. It will not be seriously contended, in view of the testimony, that she was at any time in the room with Sawyer while he was in her house, or that she spoke to him or saw him, save as he passed her in the hall as he left the house after having spent a half hour with Lottie Lockhart. The evidence, then, is wholly and entirely circumstantial. Was it sufficient to convict? Were the facts detailed consistent with her guilt of the larceny? What fact, outside of the payment to Sawyer of the $210, points in the remotest degree to her guilt of the crime alleged? Was that alone sufficient to send the case to the jury as to her? Can not that fact be reasonably

reconciled with her innocence of this larceny? Assuming that the evidence disclosed that she was keeping a house of prostitution and that the charge made by Sawyer would bring that fact to the knowledge of the police and State authorities, would she not naturally attempt to avoid prosecution for keeping a bawdy house by paying this money, even though she was entirely innocent of the larceny? There was no evidence that the house was a notorious house of prostitution, and the counsel for the State was not justified in stating such to be a fact to the jury. The house, doubtless, in the light of the evidence, was a house of prostitution, but it was not shown to be notorious as such, or that the officers of the law had discovered that it was a bawdy house, until the facts of this case developed it. Certainly the one act of prostitution shown did not make proof that it was notorious. If so surely the police officers could readily have furnished the evidence and not left it to stand upon the unsupported statement of the prosecuting attorney. Neither was there, as already said, anything even approaching the dignity of evidence tending to show it was a panel house or that the panel game was practiced there. There was no evidence that she was aware of the presence of Sawyer in the house prior to the time he passed her in the hall as he was leaving.

The payment of the $210 upon the demand and threat of arrest was a suspicious circumstance, but standing wholly disconnected with any other criminating fact, it would be violative of the fundamental principle of criminal law, that the guilt of an accused must be established beyond a reasonable doubt, to hold that one suspicious act was sufficient to convict her of larceny. It is to be noted that the money paid Sawyer under duress was not of the same denominations as that which he asserts was stolen from him. If it be conceded that Sawyer actually had the money on his person when he went into the house, the case is full of dif-

ficulty in view of his evidence as to what occurred there. But it may be his money had been stolen before he met the Lockhart woman. It may be he is honestly mistaken as to when he last counted the money.

In this connection the court excluded proof that, on the evening of the alleged theft, Sawyer said, "I have been robbed, but I don't know where; I don't know how any one could have robbed me." This evidence certainly tended to impeach or impair the certainty of his statement that he lost his money at 2111 Market street.

The defendant Dale was doubtless guilty of a criminal offense in keeping a bawdy house, but she was not charged with nor convicted of that.

As there was no evidence of joint action in the commission of the larceny, if any was in fact committed, it was error to give instruction 4. It was well calculated to impress the jury with the idea that the larceny was the result of a criminal conspiracy between the two women to steal Sawyer's money, when in fact there was no testimony on which to base it. The earnestness of the prosecuting attorney in asserting that the panel game was worked, and the fact that the women were inmates of a bawdy house, coupled with the payment by defendant Dale of the $210 to Sawyer, probably accounts for the verdict. As already said, the last circumstance was suspicious, but mere suspicion is not enough to sustain a conviction. In view of the errors noted, the judgment should be reversed as to defendant Dale and the cause remanded for a new trial in accordance with the views herein expressed, but unless other and more convincing evidence is produced by the State than appears in this record, an acquittal ought to be directed by the circuit court.

*Fox, J.,* concurs; *Burgess, P. J.,* absent.