## STATE OF MISSOURI, Respondent, v. UPTON, Appellant.

### St. Louis Court of Appeals, April 14, 1908.

**PRACTICE: Remarks of Counsel.** It is error for State's counsel, in a criminal case, in his address to the jury, to comment on facts not in evidence, and it is error for him to use language calculated to excite the prejudice of the jury.

Where the prosecuting attorney in commenting upon the absence of a witness for defense declared he "had skipped the country," of which there was no evidence, and when objection was made by the opposing counsel, made a contemptuous remark concerning the defense, and was unrebuked by the court, it was reversible error.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*Edw. D. Hays* for appellant.

It is reversible error for the prosecuting attorney to comment in his argument to the jury, upon facts not in evidence. State v. Lee, 66 Mo. 167; State v. Pagels, 92 Mo. 311; State v. Woolard, 111 Mo. 248; State v. Furgeson, 152 Mo. 99.

*Chas. H. Daves* for respondent.

STATEMENT.—At the January, 1906, term of the Cape Girardeau Circuit Court, defendant was tried by a jury and convicted of a violation of section 3011, of the dramshop act. The State offered in evidence defendant's dramshop license, which showed it was granted him on November 19, 1905, and permitted him to keep a dramshop in the city of Cape Girardeau for a period of six months. The information charged, and the State's evidence tended to show, that defendant's dramshop, or a dramshop known as his, was kept open on the nineteenth day of November, 1905, being the first day of the week, commonly called Sunday, and that both beer and whisky were then and there sold to divers persons by the bartender in charge. Defendant testified in his own behalf, that on October 29, 1906, he sold his dramshop to McLain and Stafford for $900 cash, and on the payment of the cash to him he delivered possession of the saloon to the purchasers and has had no connection with the saloon or control over it since the sale, which he testified was made in good faith. On cross-examination, defendant testified that after his arrest on the information, he in company with McLain, at the latter's request, called at the office of the prosecuting attorney with the view of fixing the matter up. In answer to a question witness said: "I asked you if you would settle; I told you I wanted to go away; I had things arranged to go to Indian Territory to see about land I bought. Didn't I tell you I wanted to go away and couldn't this be put off some way until I could get back, and you said you couldn't put it off, isn't that fact?"

"Q. I am not on the stand. A. This is what I told you.

"Q. I will ask you, Mr. Upton, if you didn't try to continue it so you could save the license? A. You said that was the only show. You told me that was the only

show you could do was to have the case continued to save the license; that is all you would do.

"Q. That I would refuse to let the license stand? A. Yes, sir; unless we could get a continuance. . . .

"Q. You were talking; you admitted to me this was your saloon? A. Yes, sir; I didn't tell you it was my saloon.

"Q. Don't you know that this sale is fraudulent and that this sale is made to prevent the license from being revoked? A. I do not know; I was there when the sale was made.

"Q. Don't you know this was made in order to evade the law, this sale? A. No, sir; it was not. . . .

"Q. You know that Stafford & McLain have no license, don't you? A. I sold out to them; turned the goods over to them.

"Q. Don't you know that you can't sell a dram-shop license? A. I don't think I sold them the license. I sold them everything and stepped out.

"Q. In other words a sale was made to squirm out of? A. No, sir.

"Q. Then you want this jury to understand, Mr. Upton, that you had no interest in that saloon on the nineteenth day of November or at the time Mr. Sutton says, some few weeks before, they bought liquor there? You sold out on the twenty-ninth of October? A. Yes, sir.

"Q. What prompted you to come to my office that night? A. I came with Mr. McLain.

"Q. You seemed to be interested. A. No, sir; I wasn't doing anything; I had been in there and he asked me if I would come over here with him and I came with him. . . .

"Q. You are a practical business man. When you sell property you usually demand or give a bill of sale? A. No, sir.

"Q. Why didn't you give him a bill of sale and

have it recorded here? A. He didn't ask for it. The man I bought out didn't give me any.

"Q. No, because in was the same kind of a deal. A. No, sir; I don't think it was.

"Q. There was no bill of sale passed? A. No, sir; never gave him any yet."

In his address to the jury the prosecuting attorney made use of the following remarks:

"If he is innocent of violating the law and if it was McLain who violated the law, why is not McLain here to prove Upton's innocence?

"I will give either one of you gentlemen $5 to do as this man Hope has done, if you can get me the evidence to convict a violator of the law.

"The defendant came to my office at night begging for mercy.

"I can only get after McLain without a license, and what evidence have I in the world that McLain—McLain has now skipped from our country, and he has left, there is no doubt from the testimony, to shield this man, and when he returns twelve other men will be called on to acquit him and to lay it on this man.

"Now then the court says that the sale must have been made honestly and in good faith. Made in honesty and in good faith when he does not tell a soul on earth about it, and he did not produce a single witness to show the records of the recorder that this bill of sale had been made, admitted there was not made, and yet there was a sale. And the strongest point of all that this man should be spokesman; that he should come to my office at night to fix the case. He had no complaint. Why didn't he say, 'You have the wrong man?' But, no, sir; he did not dare do that, but he was going to protect the man that did sell. And I ask you gentlemen to assess the heaviest punishment and let us stamp this violation out. You are the first jury that

has been called upon to try this case, and I ask you to give this man the full limit of the law."

Defendant's counsel called the court's attention to these remarks, whereupon the prosecuting attorney said: "When you throw a stick among a pack of dogs, and one is hit he always yelps."

The court did not rebuke the prosecuting attorney for his misconduct in using the foregoing remarks, in fact the court said nothing, to which action or non-action of the court, defendant saved an exception.

BLAND, P. J. (after stating the facts).—The only error assigned by defendant is the misconduct of the prosecuting attorney in his address to the jury, and the failure of the court to rebuke him for making the remarks quoted in the statement and for commenting on facts not in evidence. McLain was not produced as a witness by defendant. He could have corroborated defendant's evidence as to the sale, if there was a sale, and the failure of defendant to produce him, or to account for his absence, was a circumstance warranting proper comment by the prosecuting attorney in his address to the jury, but there was no evidence that McLain "had skipped the country," and the prosecuting attorney traveled outside the record in making the statement to the jury, that he "had skipped the country," and the comments following the statement were highly prejudicial to defendant. A proper rebuke would probably have cured the error, but none was forthcoming. Instead, when defendant's counsel moved for rebuke, the prosecuting attorney retorted with the slurring phrase, "When you throw a stick among a pack of dogs, and one is hit he always yelps." It is not only error for the State's counsel in a criminal case, in his address to the jury, to comment on facts not in evidence, but it is a more grievous error for him to use language calculated to excite the prejudice or inflame the passions of the

jurors against the defendant. It is the official duty of the prosecuting attorney to see that the defendant has a fair and impartial trial. The State wills not the conviction of any one of a crime unless he is convicted by due process of law, which includes trial by an impartial jury, uninfluenced by prejudice or passion and upon evidence which removes any reasonable doubt of his guilt. This result cannot be attained if counsel for the State, in his address to the jury, comments on facts not in evidence. [State v. Lee, 66 Mo. 1. c. 167; State .v. Pagels, 92 Mo. 1. c. 311, 4 S. W. 931; State v. Woolard, 111 Mo. 248, 20 S. W. 27; State v. Furgerson, 152 Mo. 1. c. 99, 53 S. W. 427.] We think the remarks of the prosecuting attorney were highly improper and very prejudicial, and therefore reverse the judgment and remand the cause. All concur.