**STATE of Missouri, Respondent,**

v.

**Charles SWING, Appellant.**

**No. 50811.**

Supreme Court of Missouri,
Division No. 2.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Richard F. Provaznik, Sp. Asst. Atty. Gen., St. Louis, for respondent.

John M. Goodwin, Hocker, Goodwin & MacGreevy, St. Louis, for appellant.

BARRETT, Commissioner.

Charles Swing, age 39, with prior felony convictions, has been found guilty of statutory rape upon Sharon, age 13, and sentenced to five years' imprisonment. His defense was that he had only seen Sharon once and that was on an occasion when she came to his basement apartment with Marcella Brown, age 26, to get a key to Marcella's apartment, then in the same building. He says that he came home from work about 11:30 Saturday morning, November 16, 1963, and before bathing and changing clothes sent Anthony Purham, age 8, to a neighborhood store for hamburger, but he denies that he sent Anthony with a message to Sharon to come to Marcella Brown's apartment. Except for the one occasion he denied that Sharon was ever in his apartment and he emphatically denied that he had ever had "anything to do with Sharon." And he says that the first knowledge he had of any such claim was when the police, Sharon and her mother appeared at his door after one o'clock as he was about to take a bath and arrested him.

But Anthony said that he "asked him did he want anything from the store" but before going to the store Swing told him to give Sharon the message that "Marcella wanted her up on the third floor." Sharon says that about 12:30 Anthony gave her the message that Marcella wanted to see her and in response she went across the street to 4211 E. Page but learned, possibly from two men sitting on the steps, that Marcella "wasn't there." As she started walking away Swing appeared in the gangway "and told me they (meaning Marcella) was down in his house" and she followed him to the back but when "he told me to come down, I said, 'No. Tell Marcella come up.'" But, she says, Swing put his hand over her mouth "and struggled me on down" into his basement apartment, locked the door and with force and threats proceeded to have sexual intercourse with her. Sharon grabbed her panties and immediately went home and reported the event to her mother who in turn called the police. Sharon's claim that she had been raped was corroborated by the condition of her person and her clothes and particularly by a doctor who examined her about two o'clock and made an entry on the hospital record of "a tear of the hymen at a certain location, we call it 7:30," blood and "smears showed positive findings of spermatozoa." Needless to say these briefly noted circumstances support the verdict and conviction of "carnally and unlawfully knowing any female child under the age of sixteen years." RSMo 1959, § 559.260, V.A.M.S.; State v. Ybarra, Mo., 386 S.W.2d 384.

Upon this appeal Swing's most capable court-appointed counsel briefs four assignments of error, two of them directed to the tests of the vaginal smears and the sheets from Swing's bed and two related points directed to the state's attorney's argument concerning Marcella Brown. It is only necessary to a disposition of the appeal to consider the two latter points, especially since exhibit 5, the city hospital records to which the tests seem to have been attached, has not been supplied.

The background of the argument phase of the appeal is that throughout the trial there were many references, chiefly on cross-examination, to Marcella Brown. Her husband was Claude Brown and upon this record the fact was that on the date of the offense, November 16, 1963, Claude still occupied the third-floor apartment at 4211 E. Page but Marcella Brown had moved either that day or two weeks before and the defendant claimed that Sharon, her mother and everyone else in the neighborhood knew that she had moved. Marcella was endorsed as a state's witness but was not called. And it developed on cross-examination that Claude Brown was a friend of Swing. On cross-examination Sharon said that she knew Marcella and had been in her apartment on several occasions and of course knew the difference in the entrance to her apartment and the back-door entrance to Swing's apartment. It was Sharon who said that she thought Marcella

moved on the 16th, the inference was that she obtained that information from her mother at a later date. She said that her mother had talked to Marcella on the telephone and she gave an address on Delmar but "(t)hey said she don't stay over there any more, so we don't know where she is." Repeatedly Sharon said that she did not know when Marcella moved from 4211 E. Page but "she said she was going to be there on the 16th of November" when she saw her about a week before. In conclusion she said, "Not until the day this happened did I know she moved from there. Because she came over that night, after that happened, she told me she moved. I asked her, how come she didn't tell me she moved." Sharon's mother knew that Marcella had moved about a week before the 16th but she said "her husband hadn't moved." While the mother said that she had talked to Marcella "last month," February, 1964, she did not know where Marcella was when the case was tried beginning March 17, 1964. She said that Marcella had called her on the telephone and it was her husband who reported that she lived at "4423 Delmar, second floor."

In his opening argument state's counsel made passing note of Marcella, as in referring to Anthony's testimony that Swing told him "to tell Sharon that Marcella Brown wanted her." Defense counsel made this argument: "Marcella Brown is on this information. Marcella Brown. They have got a lot of police officers in St. Louis, and if Mr. Schechter says 'Find Marcella Brown,' I'll be willing to bet you he is going to find Marcella Brown. He shouldn't have too much trouble, because Sharon's mother talked to her a month ago. The last time this case was set Sharon's mother knew where she was. I can't find her. I'm not a particularly good investigator. I'm not armed with a badge. I can't go out and say, 'I'm a police officer. Where is she?' That opens a lot of doors for you, gets a lot of things done from landlords, when you are a police officer. You walk out and say 'I'm John Goodwin. Do you have a

Marcella Brown that lives here?' 'I never heard of her.' Where is she? She could tell you a lot of things."

Towards the close of his rather extensive closing argument state's counsel made this argument: "Then we are told, 'Where is Marcella Brown?' Gentlemen, if I had the Police Department and the F.B.I. I could not find Marcella Brown, because I looked for her. I endorsed her as a witness. I wanted her testimony in this case. I looked for her, and couldn't find her.

"You know it is a very funny thing, Claude Brown, Marcella Brown's husband, is a friend of the defendant, and now Marcella Brown is gone."

The court overruled defense counsel's objection to the argument as well as his three assignments of error in his motion for a new trial based on the argument. And now defense counsel contends that the court erred in permitting state's counsel to say that he wanted the testimony of Marcella Brown and was unsuccessful in his efforts to locate her "because such argument has no foundation in the record or in any inferences which may be drawn therefrom." In the second place, he objects that it was prejudicial to permit counsel to refer to Marcella's absence and "to argue that her absence was attributable to the defendant, because Marcella Brown was an available witness for the State, not for the defendant." In response to these assignments of error the state contends, first, that the prosecutor's argument as to his attempts to locate Marcella was "retaliatory" and therefore permissible and, second, that there was no error in his referring to her absence "and to argue that her absence was attributable to the defendant."

■ As to the first part of the prosecutor's statement as to his efforts to locate Marcella and his desire to have her present as a witness, the argument was retaliatory or provoked by defense counsel and therefore was not manifestly prejudicial. State v. Wells, Mo., 305 S.W.2d 457, 460. The

parties in presenting their contentions cite cases dealing with the problem of equally available witnesses and whether it is prejudicial error to charge one of the parties with failure to call an equally available witness. State v. Collins, 350 Mo. 291, 165 S.W.2d 647; State v. Beasley, 353 Mo. 392, 182 S.W.2d 541. But this is not the decisive problem and it is not necessary to a disposition of this appeal to determine whether Marcella Brown was equally available to the parties, as indicated defense counsel provoked this phase of the argument and state's counsel had a right to retaliate in reply. For the purposes of this opinon it may be assumed that Marcella was an equally available witness but that does not solve the problem presented by this appeal.

■ The problem arises upon the state's claim and the prosecutor's plainly implied if not direct charge that the defendant had suppressed evidence and was responsible for the state's inability to find Marcella,—"You know it is a very funny thing, Claude Brown, Marcella Brown's husband, is a friend of the defendant, and now Marcella Brown is gone." Of course the suppression of evidence or attempts to persuade witnesses to disappear may become important, vital issues but usually the problem arises upon the introduction of evidence or offers of proof (24B C.J.S. Criminal Law § 1915(1), pp. 52–53) but even in those instances unfounded or unsuccessful attempts to establish suppression of evidence may result in manifest prejudice. 24B C.J.S. Criminal Law § 1915(2), pp. 57–58. There was proof here that Swing knew Marcella and that he was her husband's friend, but there was no proof or any evidence from which it was a permissible inference that he had anything to do, either directly or through someone else, with Marcella's disappearance or unavailability and of course it is not proper for counsel to argue matters not in evidence. 23A C.J.S. Criminal Law §§ 1094–1095, pp. 150–156; State v. Lockhart & Dale, 188 Mo. 427, 87 S.W. 457. And while counsel may have a

wide latitude in commenting on the fact that certain evidence is not offered, it is indeed improper to "charge the adversed party with the suppression and concealment of evidence unless such charge is supported by the evidence." 88 C.J.S. Trial § 184, p. 361.

■ Kelsey v. Kelsey, Mo.App., 329 S.W.2d 272, was a civil case and was reversed on other grounds, the court nevertheless made this observation: "Plaintiff's counsel made a statement to the effect that counsel for the defendant had suppressed evidence. This was without any basis in fact, and the court did sustain an objection, so no purpose would be served in discussing such arguments." In State v. Clapper, 203 Mo. 549, 102 S.W. 560, among other objectionable remarks was the statement that "The attorney for the defendant has tampered with the witnesses. You know it, and I know it." This is stronger language, a more direct charge than is involved here but aside from the fact that it was not supported by proof the court said that "The remarks were simply inexcusable, and ought not to have been tolerated in a court of justice." In State v. Upton, 130 Mo.App. 316, 109 S.W. 821, a prosecution for violation of the dramshop act, the prosecutor said, "I can only get after McLain without a license, and what evidence have I in the world that McLain—McLain has now skipped from our country, and he has left, there is no doubt from the testimony, to shield this man, * * *." While under the facts it was said that the prosecutor had a right to comment on Upton's failure to produce him or account for his absence "there was no evidence that McLain 'had skipped the country,' and the prosecuting attorney traveled outside the record in making the statement to the jury, * * * and the comments following the statement were highly prejudicial to defendant. A proper rebuke would probably have cured the error, but none was forthcoming." In short, the argument of the state's attorney was manifestly erroneous and prejudicial

and for that reason the judgment is reversed and remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.