STATE of Missouri, Respondent,

v.

Henry L. HENSON, Appellant.

No. 15152.

Missouri Court of Appeals,
Southern District,
Division One.

June 22, 1988.

Motion for Rehearing and to Transfer to Supreme Court Denied July 13, 1988.

Edward G. Farmer, Jr., Joplin, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Henry Lee Henson ("defendant") was found guilty by a jury of the class C felony of sexual assault in the first degree, § 566.040, RSMo 1986, by having sexual intercourse with his stepdaughter, M——, on an unspecified date between June 15, 1986, and July 15, 1986 (Count I), and guilty of the class C felony of deviate sexual assault in the first degree, § 566.070, RSMo 1986, by having deviate sexual intercourse with M—— on an unspecified date between August 15, 1986, and September 15, 1986 (Count II). The jury assessed punishment at three years' imprisonment on Count I and two years' imprisonment on Count II; the trial court ordered the sentences to run concurrently.

Defendant appeals, maintaining the trial court erred in (1) failing to sustain defendant's motion for judgment of acquittal, and (2) allowing the prosecutor to refer in final argument to certain facts in two unrelated cases.

In connection with defendant's first point the record shows he filed a motion for judgment of acquittal (presumably aimed at both counts although the motion does not say so) at the close of the State's evidence. The motion was denied. Defendant then presented several witnesses, including himself, in his defense. By doing so defendant waived any error with respect to the denial of such motion. *State v. Green*, 476 S.W.2d 567, 569[2] (Mo.1972); *State v. Thomas*, 452 S.W.2d 160, 162[4] (Mo.1970). The record contains no motion by defendant for judgment of acquittal at the close of all the evidence. In *State v. Grove*, 204 S.W.2d 757 (Mo.1947), the accused asserted the trial court erred in failing to direct the jury to acquit him at the close of the State's evidence, and also at the close of the accused's evidence. The Supreme Court of Missouri said: "It is sufficient answer that at neither stage of the trial, nor at any time, did the defendant request any such action of the trial court." *Id.* at 759[2]. The Supreme Court went on to conclude, however, that the evidence was sufficient to warrant submission of the case to the jury and to support the judgment of conviction. *Id.* at 759[3].

In *State v. White*, 439 S.W.2d 752 (Mo. 1969), the accused contended on appeal that the evidence was insufficient to make a submissible case, a point he had failed to preserve for appellate review. The Supreme Court of Missouri nonetheless accorded the contention plain error review because "if the evidence is not sufficient to sustain the conviction, plain error affecting a substantial right is involved from which manifest injustice must have resulted." *Id.* at 753[2]. The Supreme Court cited *State v. McClunie*, 438 S.W.2d 267 (Mo. 1969), where it had employed the same procedure. *Id.* at 268[1, 2]. Accordingly, we shall treat defendant's first point as a contention that all of the evidence was insufficient to support a verdict of guilty of either count, and we shall review the point for plain error under Rule 30.20, Missouri Rules of Criminal Procedure (19th ed. 1988). In deciding the issue, we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdicts, and disregard all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia*, 443 U.S. 307,

324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

M____, born July 16, 1971, testified her mother married defendant May 27, 1983, and that some six months later defendant began "feeling" M____'s breasts and vagina while she was clothed. M____ explained that she told no one because she "was afraid he might hurt me." M____ recounted that defendant would do this "two to three times a week," and that defendant's actions progressed to the point where "he put his finger in my vagina and he also put his penis in." Asked about the number of occasions on which defendant inserted his penis, M____ answered "[t]hree or four times." She added that the last time this occurred was a couple of weeks before her fifteenth birthday. That incident was the basis of Count I. Asked about the last time defendant put his finger in her vagina, M____ recalled it was "[l]ate August and early September," 1986. That incident was the basis of Count II. According to M____, all incidents of sexual abuse occurred in the various houses where she resided with her mother, defendant, and M____'s younger sister, J____.

■ Defendant insists that M____'s testimony was insufficient to support the verdicts in that it was totally inconsistent on essential facts, totally inconsistent as to dates and times, vague and confusing, uncorroborated, and so inherently contradictory or unbelievable as to cloud the mind of the court with doubt. The primary case relied on by defendant is *State v. Baldwin*, 571 S.W.2d 236 (Mo. banc 1978), where it is said:

> "... the rule in this state is that a conviction in cases of rape may be had upon the uncorroborated evidence of the prosecutrix. It is only in those cases where the evidence of the prosecutrix is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, that she must be corroborated or a judgment cannot be sustained." *Id.* at 239[4].

While *Baldwin* involved a conviction of forcible rape, we shall assume, without deciding, that the rule announced there is applicable to the two crimes in the instant case. Defendant faults M____ for her inability to recall the precise dates of the two incidents that supplied the basis for this prosecution, and he insists it is clear from M____'s testimony that she was unavailable to him during much of the period when the crime in Count I was alleged to have taken place.

M____ conceded on cross-examination that she had attended "camp" away from home from June 15 to June 21, 1986, that she had attended a second camp from June 29 until July 3, 1986, and that she was in Oklahoma from July 3 until July 5, 1986. M____ further acknowledged that her mother was home on vacation from work from July 3 until July 9, 1986, and that neither of the assaults took place during that period. Additionally, said M____, she did "babysitting" at home on weekdays, and defendant ran an auto mechanic shop next to the home with customers coming there "[e]very now and then" to pick up their automobiles. M____ confirmed that the incidents of abuse happened "during the day time."

Asked, in view of the above, when the act charged in Count I occurred, M____ answered, "Between the two camps."

Defendant makes no contention that M____ was unavailable to him during the period from August 15, 1986, to September 15, 1986, the period during which the act charged in Count II is alleged to have occurred.

The events that led to M____'s disclosure to authorities about defendant's conduct began with an argument between defendant and M____'s mother on September 14, 1986. Because of the dispute, M____'s mother went with M____ and J____ to the home of an uncle. That same night, however, M____'s mother, accompanied by M____ and J____, returned home where M____'s mother attempted to reconcile with defendant. When that proved unsuccessful M____'s mother, M____ and J____ obtained shelter in a neighbor's residence.

The next morning M____ went to school and told her best friend "[w]hat [defendant] had done to me through the past." M____ and her friend then went to a counselor's office where M____'s friend told the counselor what M____ had reported. School authorities notified M____'s mother, and M____ eventually was accompanied by her mother to the sheriff's office where M____ gave a statement.

In considering defendant's first assignment of error, we point out that corroboration of M____'s testimony was not required merely because of her delay in reporting defendant's conduct. M____ explained that she did not inform authorities of defendant's acts prior to September 15, 1986, because (a) she was afraid defendant might hurt her or someone else, (b) defendant had told her that if she revealed what had occurred "he would get put in jail and I would be put in a foster home," and (c) her mother, who had "been an alcoholic," would be driven back to drinking. Similar reasons for delay have existed in other cases where no requirement for corroboration has been imposed. *State v. Smith*, 727 S.W.2d 932, 935[2] (Mo.App.1987); *State v. Ellis*, 710 S.W.2d 378, 380–82[1] (Mo.App.1986); *State v. Chamberlain*, 648 S.W.2d 238, 239–40 (Mo.App.1983).

Furthermore, M____ testified that in March, 1986, she told another friend "what was going on" between her and defendant, but cautioned the friend to tell no one because of fear of defendant. At trial, the friend confirmed that in March, 1986, M____ had complained "of having a sex problem with Lee Henson." The friend recalled, "She told me he was messing around with her." The friend verified that M____ had warned her not to tell anyone, as M____ "was scared of him."

We find nothing inconsistent, vague, confusing, or contradictory in M____'s testimony. It appears to us that what defendant is really arguing is that because of (a) M____'s absences from the home during portions of the period from June 15, 1986, until July 15, 1986, and (b) the presence of others in the home during that period, there was no opportunity for the crime

charged in Count I to have been committed. That, however, was for the jury—not us—to determine. It is not the function of this Court to weigh the evidence; our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty. *State v. Kelly*, 539 S.W.2d 106, 109[3] (Mo. banc 1976); *State v. Porter*, 640 S.W.2d 125, 126[2] (Mo.1982).

In that regard, we note that the State's evidence did not consist solely of M____'s testimony. M____'s mother told the jury she observed defendant "kissing [M____] real passionately on the neck," and "when I got real angry and real mad he finally quit it." M____'s mother also testified: "Many a night I woke up ... and he'd be standing in [M____'s] room. I would ask him why he was there and he'd say, Just checking to make sure she was asleep." M____'s mother added that she never awakened to find defendant standing in J____'s room. M____'s mother also recalled that during the summer of 1986 defendant told her on several occasions that M____ "was going to call sexual abuse on him." Asked when this would occur, M____'s mother replied, "When him and [M____] would be into an argument."

We hold that the verdicts were amply supported by the evidence, and that no manifest injustice or miscarriage of justice resulted by reason of the findings of guilty. Defendant's first point is denied.

■ The origin of defendant's second point is found in the testimony of M____'s mother. She disclosed that she divorced defendant October 30, 1986, because of "[t]he sexual abuse to [M____]." M____'s mother admitted, however, that she still loved defendant despite what had happened, that she had spent two nights with him in a motel, and that she had told him she would like to remarry him "when this is over."

During final argument defense counsel said:

"After this all happened and [M____'s mother] knew about it, [she] still dated Lee, went to motels with Lee, still wanted to marry Lee. Now, ladies and gen-

tlemen, is that rational? Does a mother do that sort of thing if she believes that some man has molested her daughter? I say absolutely not. It's absolutely unnatural. It never happens and it never will happen. We know what mothers are and we know what mothers think of their daughters and they're not—the only time they'd speak to the man probably would be to shoot his head off. [M___'s mother] knows that didn't happen and that's why she's spent nights with Lee and that's why she wanted to remarry him. She knows it didn't happen. And it didn't happen."

In the prosecutor's rebuttal argument we find this:

"He says that [M___'s mother] still wants to marry Lee Henson and therefore you should conclude from that that she knows that [M___ is] lying. And what he told you was—I want you to remember this—what he told you is that it had never happened that a mother has not backed her child, and that it will never happen that a mother will not back her child, that the mother will always back her child. He told you that it has never happened. And, ladies and gentlemen, if you sat in this very courtroom over the last two years you'd have seen it happen—

[Defense counsel]: I object, Your Honor, about what might have happened in some other case.

[Prosecutor]: He opened it up. He said it's never happened and that's just not the truth.

[Defense counsel]: It's not in evidence, Your Honor.

The Court: I think—

[Prosecutor]: He opened it up.

The Court: I think it has been opened up.

(continuing by [Prosecutor]) If you'd sat in here you could have seen cases that I have tried where a mother would back her husband against her own daughter. It's happened in the Charles Taylor case, it's happened in the Jack Owens case, and it happens time after time after time. And it's a sad deal."

Defendant's second point avers the trial court committed reversible error in overruling the objection to the prosecutor's argument.

The State, in its brief, concedes it is improper for a prosecutor to argue matters not in evidence. *State v. Strickland*, 609 S.W.2d 392, 396[11] (Mo. banc 1980); *State v. Cuckovich*, 485 S.W.2d 16, 27[21] (Mo. banc 1972). There was no mention in the evidence at defendant's trial of either of the cases identified by the prosecutor in his argument. The prosecutor clearly told the jury that in both cases mothers had backed their husbands instead of their daughters.

The State reminds us, however, that a trial court has considerable discretion in allowing or rejecting argument of counsel, and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. *State v. Moore*, 620 S.W.2d 370, 373[1] (Mo. banc 1981); *State v. Armbruster*, 641 S.W.2d 763, 766[4] (Mo. 1982). The same rule was articulated in *State v. Wood*, 596 S.W.2d 394, 403[27] (Mo. banc 1980), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), with the admonition that unless an abuse of discretion is demonstrated, to the prejudice of the accused, the case will not be reversed on appeal. Furthermore, said the Supreme Court in *Wood*, it is proper for the prosecutor to retaliate to an issue raised by an accused's argument even if the prosecutor's comment would otherwise be improper. *Id.* at 403[28].

We find several cases where a prosecutor, in retaliation to an argument by counsel for the accused, stated facts outside the record and appellate relief was denied.

One such case is *State v. Ellifrits*, 459 S.W.2d 293 (Mo. banc 1970), where the prosecutor stated in rebuttal that he had offered the State's whole file to the accused's attorney. The prosecutor continued, "He could look at it—do anything he wanted to do—nothing hid in this case." On appeal the accused maintained the argument went beyond the issues and evidence. Rejecting that contention, the Supreme Court stated the argument was made in reply to an argument by the accused's at-

torney, consequently the accused was in no position to complain. *Id.* at 296[3].

In *Cuckovich*, 485 S.W.2d 16, the accused's attorney argued that the jury should acquit the accused because his fingerprints had not been found at the crime scene. In rebuttal the prosecutor was permitted to state, over objection, that "there aren't one percent of the cases tried in this county who are able to bring in fingerprint identification of anybody." On appeal the accused assigned error in the overruling of his objection, in that there was no evidence to support the prosecutor's statement. Rejecting the point, the Supreme Court said:

"It is our view that the jury would understand that the [prosecutor] was just making a guess or estimate concerning the number of cases where fingerprint evidence was produced and would regard it more in the nature of argument than a factual statement. We accordingly rule that no reversible error occurred in that regard." *Id.* at 27–28[22].

In *State v. Swing*, 391 S.W.2d 262 (Mo. 1965), the accused's attorney argued, in essence, that the State should have been able to produce a particular individual as a witness. In rebuttal the prosecutor stated he had looked for the witness, had wanted her testimony, but couldn't find her. On appeal the accused assigned error in the overruling of his objection to the prosecutor's argument because it had no foundation in the record or in any inferences which could be drawn therefrom. Rejecting that contention, the Supreme Court held that the prosecutor's argument was retaliatory or provoked by the accused's counsel, and thus was not manifestly prejudicial. *Id.* at 264[2].

In *State v. Hill*, 628 S.W.2d 361 (Mo.App. 1981), the accused's counsel argued that the reason one of the accused's companions fled the accused's automobile when police approached was because of "human nature." In rebuttal the prosecutor stated that at the time the companion absconded he was wanted for burglary, and had since been arrested. The accused's attorney objected that there was no evidence of a warrant for the companion, and requested a mistrial. The trial court sustained the objection and directed the jury to disregard the prosecutor's comment, but denied a mistrial. On appeal the accused assigned error in the refusal of a mistrial. The appellate court rejected the point, stating:

"The state had the right to retaliate to the defense attorney's argument as to [the companion's] reasons for running, because there had been no evidence in the record to support the defense attorney's statement he ran because of 'human nature.' " *Id.* at 362[4].

In *State v. Bellew*, 586 S.W.2d 461 (Mo. App.1979), a prosecution for driving while intoxicated, the accused's attorney argued there was no showing of the accused's "blood-alcohol content," and specifically "no Breathalyzer test." In rebuttal the prosecutor stated there was no evidence of a Breathalyzer examination because the accused refused to take one. On appeal the accused maintained the trial court erred in allowing the prosecutor to make such statement. The appellate court held the trial court did not abuse its discretion in overruling the objection. *Id.* at 463.

In *State v. Granberry*, 484 S.W.2d 295 (Mo. banc 1972), the accused in closing argument challenged the State for not calling an officer who had questioned the accused. In response the prosecutor stated the officer had been shot. On appeal it was held that if such comment were improper, it was invited error of which the accused was in no position to complain. *Id.* at 301.

Measuring defendant's second point by the holdings in the cases just summarized, we conclude that the trial court did not abuse its discretion in overruling defendant's objection to the segment of the prosecutor's argument quoted earlier. Defendant's attorney had stated it was unnatural for a mother who believed a man had molested her daughter to resume a relationship with him, that it never happens and never would happen. There was, of course, no evidentiary support for that proclamation. In rebuttal the prosecutor stated there had been instances in the same courtroom where mothers had not backed

their children, he identified two such cases by name, and he added that it happens time after time. There was likewise no evidentiary support for those declarations.

Absent defense counsel's argument, the prosecutor's comments would have unquestionably been improper. However, the prosecutor's comments were retaliatory to defense counsel's argument, and under the authorities discussed above we hold the trial court did not abuse its discretion in overruling defendant's objection.

Judgment affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.